UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ADRIANA TIBBETTS and DARRYL TIBBETTS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                Plaintiffs,

-against-

THE CHEESECAKE FACTORY RESTAURANTS, INC.,

                Defendant.

---------------------------------------------------------------X

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)**

Plaintiffs ADRIANA TIBBETTS and DARRYL TIBBETTS ("Plaintiffs"), on behalf of themselves and other similarly situated individuals, allege the following, in relevant part, upon information and belief, and their own personal knowledge.

**NATURE OF CASE**

1. This class action complaint is based on Defendant The Cheesecake Factory Restaurants, Inc.'s ("Defendant" or "Cheesecake Factory") violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., as amended ("FCRA"). Specifically, this action is based upon § 1681c(g)(1) of the FCRA, which states: "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

2. § 1681c(g) was designed to combat the surge of identity theft experienced throughout the United States in recent years, requiring companies that accept credit and debit

cards restrict the information they print on sales receipts. When followed, this practice reduces an identity thief's ability to obtain valuable account information relating to a consumer.

3. Despite the simple steps necessary to comply with the statute, and despite abundant notice regarding the need to comply, Defendant has simply chosen to ignore the Federal mandate to comply with this statute. As such, consumers who purchase goods and services from Defendant receive none of the benefits that § 1681c(g) was designed to confer, and are uniformly burdened with an elevated risk of identity theft.

4. Despite the clear language of the statute, Defendant willfully chose not to comply with the FCRA. As such, all consumers who purchased, among other things, food, drinks, gift cards, and other merchandise, from Cheesecake Factory using a credit card or debit card suffered violations of 15 U.S.C. §1681c(g), have been uniformly burdened with a heightened risk of credit card fraud and identity theft, and are entitled to an award of statutory damages.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and 1337, as the claims in this action arise under violation of a federal statute.

6. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred here. Defendant does business in this District, and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

7. Plaintiffs are natural persons, who reside in the State of New York, Suffolk County.

8. Cheesecake Factory is a California corporation maintaining its corporate office at 26901 Malibu Hills Road, Calabasas Hills, California 91301. Its registered agent for service of process in the State of New York is Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

9. Defendant "accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

10. Defendant operates 185 full-service dining restaurants throughout the United States. According to its website, its mission is "[t]o create an environment where absolute guest satisfaction is our highest priority."[1]

11. As demonstrated in detail below, the acts and omissions of Cheesecake Factory fly in the face of the spirit of Cheesecake Factory's mission statement, which is "[t]o create an environment where absolute guest satisfaction is our highest priority."

## FACTS

12. In 2003, Congress enacted FACTA to amend the FCRA to add identity theft protections for consumers. One such FACTA provision was devised to prevent identity thieves' ability to gain sensitive personal information via a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

13. This provision, codified at 15 U.S.C. § 1681c(g), provides that:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

---

[1] Investors.thecheesecakefactory.com/phoenix.zhtml?c=109258&p=irol-mission

(the "FACTA Receipt Provision").

14. Significantly, after its enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

15. Notwithstanding this generous three-year cushion and in spite of the 11 years that have past since the statute was enacted, Cheesecake Factory continues to issue receipts at the point of sale transactions which contain both 5 digits from the credit card or account number as well as the expiration date, in direct violation of the FACTA Receipt Provision.

16. Cheesecake Factory accepts, *inter alia,* the following payment cards: VISA, MasterCard, American Express, and Discover.

17. Upon information and belief, Cheesecake Factory's merchant bank, by contract, required Cheesecake Factory to comply with VISA's and MasterCard's rules and regulations and that it is Cheesecake Factory's responsibility to read and periodically review VISA's and MasterCard's rules and regulations.

18. VISA, MasterCard, American Express, and Discover issue at least once a year updated rules and regulations, which Cheesecake Factory is required to review. These rules and regulations placed Cheesecake Factory on actual notice that its conduct here was prohibited, and American Express and Discover would have notified Cheesecake Factory directly that such conduct it has now engaged in here would violate 15 U.S.C. §1681c(g)(1)'s truncation requirements.

19. For example, the August 12, 2006, edition of Rules for Visa Merchants (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that only the last four digits of an account number should be printed on the customer's

copy of the receipt and the expiration date should not appear at all. Significantly, a picture of a receipt demonstrating that the card's account numbers needed to be truncated accompanied these statements. VISA required complete compliance by July 1, 2006—five months ahead of the statutory deadline.

20. Moreoever, the February 2012 version of MasterCard's Security Rules and Procedures for merchants provides, in part, that all electronically printed receipts, "must reflect only the last four (4) digits" of a customer's card account number.

21. VISA, MasterCard, the Payment Card Industry Security Standards Council—a consortium founded by VISA, MasterCard, Discover, American Express and JCB companies that sell cash registers and other devices for the processing of credit or debit card payments—and other entities informed merchants about the truncation requirements of 15 U.S.C. §1681c(g)(1) and its prohibition on the printing of expiration dates, and the need to comply with same.

22. The card issuing organizations such as American Express and Discover proceeded to require compliance with the truncation requirements of FACTA, by contract directly with Cheesecake Factory.

23. Upon information and belief, Cheesecake Factory would have received such contractual information from American Express and Discover at least once a year since the FACTA amendments to the FCRA became effective.

24. Upon information and belief, in obtaining the right to accept credit cards and debit cards, Cheesecake Factory contractually agreed to abide by the Payment Card Industry Security Standards and the card issuing regulations, which would include the duty to review

periodically their receipts for compliance, including whether their point of sale terminals were printing too much card information.

25. Truncation standards, including the standards reflected in the VISA Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of only the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

26. Most of Cheesecake Factory's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with 15 U.S.C. §1681c(g)(1) by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same and could have ensured that no violation would have occurred by conducting an audit or by properly training its store managers and employees.

27. 15 U.S.C. §1681c(g)(1)'s payment card account number truncation requirements are ubiquitous in the world of dining establishments.

28. Cheesecake Factory uses one or more cash registers and/or other machines or devices that electronically print receipts for all credit card and debit card transactions that occurred within the United States based stores.

29. Each of Cheesecake Factory's point of sale terminals was programmed to print information that Cheesecake Factory has required to be printed on its receipts.

30. Notwithstanding the FACTA Receipt Provision, Cheesecake Factory continues to deliberately, willfully, intentionally, recklessly, and negligently violate FACTA by issuing receipts that do not comply with the FCRA.

31. Cheesecake Factory's practice not only violates the law, it exacts harm by exposing consumers' sensitive account information and subjecting each affected consumer to an ongoing and elevated risk of becoming the victim of identity theft.

### THE REPRESENTATIVE PLAINTIFFS' EXPERIENCE

32. On or about January 22, 2017, Plaintiffs Adriana Tibbetts and Darryl Tibbetts dined at one of Defendant's stores, located in the Mall at the Source, 1504 Old Country Road, Westbury, New York 11590 (hereafter referred to as the "Cheesecake Factory Westbury"). To pay for the dinner, Adriana Tibbetts used her Visa credit card. Following the transaction, Plaintiff Adriana Tibbetts received a receipt, which included both the first six numbers and the last four numbers of her Visa credit card. The receipt (hereinafter referred to as "Receipt") is attached hereto as Exhibit A.

33. After paying for their meal, Plaintiffs purchased two slices of cake from the bakery shop of the Cheesecake Factory Westbury. To pay for the slices of cake, Plaintiff Darryl Tibbetts used his Mastercard credit card. Following the transaction, Plaintiff Darryl Tibbetts received a receipt, which, upon information and belief, included both the first six numbers and the last four numbers of his credit card.

34. Upon information and belief, credit card and debit card receipts are printed from at least eight cash register terminals at Cheesecake Factory Westbury.

35. Upon information and belief, every terminal of this restaurant establishment has been printing—and continues to print—receipts bearing both the first six numbers and the last four numbers of consumers' credit cards and debit cards.

36. Upon information and belief, Cheesecake Factory Westbury has been printing receipts bearing the first six numbers and the last four numbers of consumers' credit cards in violation of FACTA for the last 11 years since the statute's enactment.

37. Upon information and belief, these merchant copies and duplicate copies of these receipts, bearing the first six numbers and last four numbers of consumers' credit cards, are routinely left on the dining tables of Cheesecake Factory Westbury, without any protocol on Defendant's part to safeguard such merchant copies and duplicate copies. In this regard, upon being seated at their dining table, Plaintiffs observed first-hand on their dining table a black guest check presenter containing white slips of paper, most certainly left behind from the prior consumers' transaction.

38. At all relevant times, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

39. At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees, was willful, reckless, and in grossly negligent disregard for federal laws and Plaintiffs' rights under the laws.

40. Upon information and belief, not one employee of the Cheesecake Factory received training in the detection of credit and debit card receipts noncompliant with the FACTA Receipt Provision.

41. Upon information and belief, Cheesecake Factory willfully failed to perform software updates and willfully failed to take steps to ensure that the cash register terminals were programmed in compliance with the FACTA Receipt Provision.

42. Upon information and belief, Cheesecake Factory willfully failed to train staff to ensure compliance with the FACTA Receipt Provision.

43. Upon information and belief, Cheesecake Factory willfully failed to assign responsibility to any particular employee of Cheesecake Factory for compliance with the FACTA Receipt Provision.

44. Upon information and belief, all cash register terminals located in Cheesecake Factory printed receipts bearing the first six digits of the card number and the last four digits of the card number—in stark violation of the FACTA Receipt Provision.

45. Upon information and belief, in this case, Cheesecake Factory's point of sale terminals contained a code for it to obtain the account number of each cardholder's debit or credit card and print the first six and the last four digits on a receipt.

46. The printing of more than the last four digits of an account number on a receipt does not happen by accident; it requires the point of sale terminal to be intentionally programmed to do so.

47. Printing more than the last four digits of a payment card along with the name of the cardholder gives Cheesecake Factory a better ability to distinguish its customers' purchases.

48. Cheesecake Factory received notice of 15 U.S.C. §1681c(g)(1)'s requirements.

49. Cheesecake Factory was contractually bound not to print any more than the last five digits of credit card or debit card account numbers on any electronically printed receipts provided to the cardholder at the point of sale.

50. Cheesecake Factory knew the truncation requirements of 15 U.S.C. §1681c(g)(1) regarding credit card account numbers prior to January 22, 2017.

51. Cheesecake Factory either knowingly violated 15 U.S.C. §1681c(g)(1) or, alternatively, failed to take necessary steps of a known danger to prevent 15 U.S.C. §1681c(g)(1) from being violated, which is reckless conduct.

52. Upon information and belief, Cheesecake Factory violated 15 U.S.C. §1681c(g)(1) at least one thousand times a day at all times relevant to this Complaint.

53. Upon information and belief, Cheesecake Factory willfully and intentionally overlooked the legal requirements that applied to the devices that print receipts.

## CLASS ALLEGATION

54. Plaintiffs bring this action individually and as a class action for Defendant's violation of § 1681c(g) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. Plaintiffs propose the following class, defined as follows, subject to the Court's modification as required:

   (i) All persons in the United States (ii) who, on or after February 21, 2015 and continuing through the resolution of this case, when making payment for goods or services at a Cheesecake Factory establishment (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than the last five digits of said credit card or debit card.

55. The named Plaintiffs fall within the class definition and are members of the class. Excluded from the class are Defendant and any entities in which Defendant has a

controlling interest, Defendant's agents and employees, Plaintiffs' attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

56. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody, or control of Defendant or third party credit card issuers.

57. Defendant operates restaurants throughout the United States. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical.

58. Although the precise number of Class members is known only to Defendant, Plaintiff avers, upon information and belief, that there are several thousand persons in the United States as defined by the putative class definition proposed above.

59. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

60. There are common questions of law and fact that predominate over any questions affecting on the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

61. This suit seeks statutory damages and injunctive relief on behalf of the class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the class definition to seek recovery on behalf of

additional persons as warranted as facts are learned through further investigation and discovery.

62. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the class predominate over questions that may affect individual class members, including:

   a. Whether, within the two years prior to the filing of this complaint, Defendant and/or its agents accepted payment by credit card or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last five digits of the card were printed;

   b. Whether Defendant's conduct was done with knowledge or at a minimum was reckless in light of a known danger entitling Plaintiffs and the class members to punitive damages;

   c. Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

   d. Whether Defendant should be enjoined from engaging in such conduct in the future.

63. As persons that purchased food and services from Defendant and received a receipt upon which more than the last 5 digits of the card number were printed, Plaintiffs are asserting claims that are typical of the proposed class. Plaintiffs will fairly and adequately represent and protect the interests of the class in that Plaintiffs have no interests antagonistic to any member of the class. Plaintiffs are committed to litigating this action vigorously. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this claim.

64. It is proper to certify as a class action this case brought under 15 U.S.C. §1681c(g)(1). E.g. Stillmock v. Weis Mkts., Inc., 385 Fed. Appx. 267 (4th Cir. 2010) (unpublished).

65. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members, which would: (a) establish incompatible standards of conduct for the parties opposing the Class; (b) create a risk of adjudications with respect to individual members that would be dispositive of the interests of other members not parties to the adjudications; and/or (c) substantially impair or impede their ability to protect their interests.

66. Upon information and belief, Cheesecake Factory has retained or has access to the credit card and debit card account numbers of the putative class members that can be used in identifying the cardholders.

67. Defendant has acted or refused to act on grounds generally applicable to the Class, which warrants final injunctive relief or corresponding declaratory relief for the Class as a whole.

68. Whether Defendant failed to comply with the Receipt Provision as detailed by 15 U.S.C. § 1681c(g) can be determined easily through a review of Defendant's policies and a ministerial inspection of Defendant's business records.

69. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small, as the maximum statutory damages are limited to $1,000.00 under the FCRA. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

## COUNT ONE

### (WILLFUL VIOLATION OF FCRA 15 U.S.C. §1681c(g)(1))

70. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

71. Cheesecake Factory is a "person that accepts credit cards or debit cards for the transaction of business" as that phrase is used in 15 U.S.C. §1681c(g)(1).

72. Plaintiffs each are a "cardholder" as that term is used in 15 U.S.C. §1681c(g)(1).

73. Plaintiff Adriana Tibbetts was provided "any receipt" by Cheesecake Factory. Exhibit A.

74. Plaintiff Darryl Tibbetts was provided "any receipt" by Cheesecake Factory.

75. Cheesecake Factory provided each Plaintiff any receipt at "the point of sale or transaction" as that phrase is used in 15 U.S.C. §1681c(g)(1).

76. In regard to Plaintiffs and each putative class member, Cheesecake Factory did not comply with 15 U.S.C. §1681c(g), which provides that:

> …no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.
>
> ***
>
> **(3) EFFECTIVE DATE**
> This subsection shall become effective—
> **(A)** 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and
> **(B)** 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. §1681c(g)(1) and (3).

77. 15 U.S.C. §1681c(g)(1) cannot be reasonably read to permit the printing of the first six digits of the card number in addition to the last four digits.

78. Defendant employs the use of said devices for point of sale transactions at Defendant's establishment—the Cheesecake Factory.

79. Specifically, at 1504 Old Country Road, Westbury, New York 11590, the location of the Cheesecake Factory Westbury, Defendant provided Plaintiffs and members of the Class receipt(s) by Defendant that failed to comply with the FACTA Receipt Provision.

80. Defendant was aware, on or before January 22, 2017, of both the FACTA Receipt Provision as well as the need to comply with said provision.

81. In anticipation of the December 4, 2006 deadline, many credit card companies, including, but not limited to, VISA and MasterCard, advised companies of the need for compliance with the FACTA Receipt Provision. Additionally, many credit card companies, such as VISA and MasterCard, implemented policies well in advance of the December 4, 2006 deadline, to ensure the compliance with the FACTA Receipt Provision, by themselves, as well as that of their consumers.

82. In further anticipation of the December 4, 2006 deadline and the FACTA Receipt Provision, the majority of Defendant's peers and competitors took the necessary steps to bring their business practices in compliance with FACTA.

83. "FACTA was intended to 'protect consumers from identity thieves' and 'to limit the number of opportunities for identity thieves to 'pick off' key card account information.'" Barbieri v. Readstone Am. Grill, Inc., 07 CV 5758, 2009 U.S. Dist. LEXIS 9309 * 3-4 (N.D. Ill. Feb 6, 2009) (quoting S. Rep. No. 108-166, at 3). Moreover, Congress recognized a card holder's right of privacy not to have the card holder's information exposed

on an electronically printed payment card receipt. Creative Hospitality Ventures v. U.S. Liability Ins., 655 F.Supp.2d 1316, 1333-34 (S.D. Fla. 2009). When signing FACTA into law, President Bush noted the government was "act[ing] to protect individual privacy." Id. at 1333, quoting 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

84. Notwithstanding the generous three-year cushion to prepare for FACTA and its accompanying provisions (including but not limited to the FACTA Receipt Provision; knowledge of the FACTA Receipt Provision and FACTA as a whole; the repeated reminders of FACTA and its accompanying provisions; and the actions of Defendant's peers and competitors), Defendant knowingly, willfully, intentionally, and recklessly violated and continues to violate the FCRA and the FACTA Receipt Provision. As a direct result, Plaintiffs and members of the Class continue to be exposed to an elevated risk of identity theft.

85. Cheesecake Factory's conduct exposed Plaintiffs and the members of the class to an increased risk that their credit card or debit card could be compromised.

86. Plaintiff Adriana Tibbetts lost time in reviewing her receipt to determine whether Cheesecake Factory was in compliance with 15 U.S.C. §1681c(g)(1).

87. Plaintiff Darryl Tibbetts lost time in reviewing his receipt to determine whether Cheesecake Factory was in compliance with 15 U.S.C. §1681c(g)(1).

88. One of the intended benefits of 15 U.S.C. §1681c(g)(1) was to eliminate the need for a person to review his or her receipt to make sure that too much information was not contained on the receipt before disposing of it.

89. One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on these receipts to engage in transactions. Identity thieves who use this method are known as carders and "dumpster

divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, *Identity Theft Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way*, Wall Street Journal, Oct. 5, 2006, p. B1.

90. Cheesecake Factory received notice of 15 U.S.C. §1681c(g)(1)'s requirements.

91. Cheesecake Factory was contractually bound not to print any more than the last five digits of credit card and debit card account numbers on any electronically printed receipts provided to the cardholder at the point of sale.

92. Cheesecake Factory knew the truncation requirements of 15 U.S.C. §1681c(g)(1) prior to January 22, 2017.

93. Cheesecake Factory either knowingly violated 15 U.S.C. §1681c(g)(1) or, alternatively, failed to take necessary steps to prevent the known danger of 15 U.S.C. §1681c(g)(1) from being violated, which is reckless conduct.

94. Upon information and belief, Cheesecake Factory violated 15 U.S.C. §1681c(g)(1) at least one thousand times a day at all times relevant to this Complaint.

95. As a result of Defendant's willful violations of the FCRA, Defendant is liable to Plaintiffs and members of the Class pursuant to 15 U.S.C. § 1681.

## JURY TRIAL DEMAND

96. Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

97. WHEREFORE, Plaintiffs seek judgment in favor of themselves and the Class for the following relief:

a. An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Class;

b. Statutory damages for willful violation of the FCRA in an amount between $100.00 and $1,000.00 per Class member;

c. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681 of the FCRA;

d. An order enjoining Defendant from continuing to violate the FACTA Receipt Provision;

e. An order directing Defendant to hereafter electronically print receipts from point of sales transactions in compliance with 15 U.S.C. § 1681c(g); and

f. Such other and further relief as may be necessary, just and proper.

Dated: February 21, 2017

                            Respectfully submitted,

                                /s/
                        _____
                        Joseph P. Fusco, Esq. (JF8874)
                        IACONIS FUSCO, LLP
                        Attorneys for Plaintiffs and the Class
                        340 Trinity Place
                        Malverne, NY 11565
                        (516) 535-9295